UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN STATE PAINTERS INSURANCE
FUND, TRUSTEES OF MICHIGAN STATE
PAINTERS INSURANCE FUND, PAINTERS
UNION LOCAL NO. 1052 PENSION TRUST
FUND, TRUSTEES OF PAINTERS UNION
LOCAL NO. 1052 PENSION TRUST FUND,
and INTERNATIONAL UNION OF PAINTERS
AND ALLIED TRADES, DISTRICT COUNCIL
1M,

Case No. 23-1191

Hon.

        Plaintiffs,

v.

BONDHARD, L.L.C. and AUGUSTINE J.
ARREGUIN aka AJ ARREGUIN,

        Defendants.
_____/

Jeffrey M. Lesser (P33298)
Attorney for Plaintiffs
30300 Northwestern Highway, Suite 320
Farmington Hills, Michigan  48334
(248) 785-5225
lesser@jeffreymlesser.com
_____/

# **COMPLAINT**

    NOW COME Plaintiffs to complain against Defendants as follows:

PARTIES, JURISDICTION AND VENUE

1. Plaintiffs, Michigan State Painters Insurance Fund and Painters Union Local No. 1052 Pension Trust Fund (the "Funds"), are jointly-administered trust funds established pursuant to Section 302 of the Labor-Management Relations Act of 1947, as amended (hereinafter "L. M. R. A."), 29 U. S. C. § 186, and are administered in Lansing, Michigan and Oak Brook, Illinois.

2. The Funds are multiemployer employee benefit plans within the meaning of Section Three of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U. S. C. §1002. The Funds are administered by joint Boards of Trustees, half of whom are Employer Trustees appointed by contributing employers and half of whom are Union Trustees appointed by International Union of Painters and Allied Trades, District Council 1M (the "Union"), a labor organization representing employees in an industry affecting commerce.

3. Plaintiff Trustees of the Funds, who reside in the State of Michigan, are officially designated and are by law invested with management and control of the Funds, in compliance with Section 302 of the L. M. R. A., 29 U. S. C. §186, and appear in this action as representatives of the participants and beneficiaries of the Funds.

4. Defendant BondHard L.L.C. (the "business entity"), is a Michigan

2

limited liability company with a principal place of business in Sunfield, Michigan.

5. Defendant Augustine J. Arreguin, commonly known as AJ Arreguin (the "individual Defendant"), is an individual who resides in and/or conducts business in Sunfield, Michigan.

6. Defendants acted in concert to breach the obligations of the business entity to pay fringe benefit contributions, and to divert money paid to the business entity to be held in trust for the Funds. (The term "Defendant" will hereinafter refer to all Defendants unless otherwise specified.)

7. Defendant is, or was at all relevant times, in an industry affecting commerce within the meaning of Section Four of ERISA, 29 U. S. C. §1003 and Section 301 of the L. M. R. A., 29 U. S. C. §185.

8. Jurisdiction of this Court is predicated on Section 502 of ERISA, 29 U. S. C. §1132 and Section 301 of the L. M. R. A., 29 U. S. C. §185, in this action to enforce provisions of multiemployer benefit plans and to remedy violations of a contract between an employer and a labor organization representing employees in an industry affecting commerce.

9. Venue is proper in this District pursuant to Section 502(e)(2) of ERISA, 29 U. S. C. §1132(e)(2), as the Michigan State Painters Insurance Fund is administered, the breach took place and Defendant resides and may be found in this District.

## CLAIM FOR DAMAGES

10. Plaintiffs reallege paragraphs 1-9 inclusive of this Complaint and incorporate the same herein by reference.

11. During all periods of time relevant to this action, the business entity has been party to a collective bargaining agreement (hereinafter individually and collectively referred to as the "collective bargaining agreement") with the Union through its affiliate Painters Local Union No. 845.

12. Under the collective bargaining agreement, Defendant agreed to be bound by the Agreements and Declaration of Trust ("Trust Agreements") governing operations of the Funds, and all related agreements, rules, regulations, reporting forms and other requirements adopted by the Trustees of the Funds, including in the enforcement and collection of fringe benefit contributions.

13. Pursuant to the collective bargaining agreement, the business entity agreed to make periodic payments to the Funds, other fringe benefit contributions and the Union (hereinafter "contributions or "fringe benefit contributions"), such payments representing withheld wages and fringe benefits earned by employees of the business entity performing work covered under the agreements ("bargaining unit work") for the benefit of those employees, for the purpose of funding the business entity's employees' retirement benefits, medical coverage, vacation and holiday pay, and other benefits of employment, and to comply with all policies and

decisions of the Trustees of the Funds.

14. Pursuant to the collective bargaining agreement, the business entity agreed to pay contributions remitted with standard contribution forms by the fifteenth day of the month following the month in which hours were worked requiring such contributions.

15. Pursuant to the collective bargaining agreement, when such submission of payments and contribution forms described above is not made in a timely manner, the business entity agreed to pay liquidated damages and interest on contributions from the dates they are assessed, along with attorney's fees and costs incurred in enforcing the business entity's obligations to the Funds, with liquidated damages assessed at a flat twenty percent and interest assessed at six percent above the interest rates set by the Internal Revenue Service for underpayments of taxes.

16. Pursuant to the collective bargaining agreement, the business entity agreed to maintain accurate books and records of bargaining unit hours worked by its employees and to permit inspection and audit, at the discretion of the Funds, of all books and records necessary to determine whether the business entity was making all contributions required by the agreements, and to pay all unpaid contributions disclosed in an audit, plus liquidated damages and interest if the audit determined delinquencies in contributions.

17. On March 17, 2023, the Funds completed an audit of the business entity

covering work performed from October 2019 through June 2021, disclosing $11,157.16 in unpaid fringe benefit contributions. Defendant owes an additional $232.90 in liquidated damages on untimely paid contributions, $7,616.58 in interest on the audit-disclosed delinquencies as of this date, and an audit fee of $340.75.

18. Defendant's known delinquencies of $19,347.39 in fringe benefit contributions, liquidated damages, interest and audit fee as of this date are exclusive of any additional indebtedness owing for work performed from July 2021 onward, and liquidated damages and interest from this date forward.

19. Since the onset of Defendant's obligations toward the Funds, Defendant has chronically breached its responsibilities, including failing to pay fringe benefit contributions that were disclosed in a previous audit and satisfying its indebtedness only after intervention of the Funds' legal counsel and initiation of a claim with Defendant's bonding company.

20. Defendant's persistent flaunting of its contractual and statutory obligations to report work performed under the agreements and to pay fringe benefit contributions in a timely manner constitutes willful dereliction of Defendant's obligations. Such dereliction has caused and will continue to cause irreparable injury to the participants and beneficiaries of the Funds, through jeopardizing their rights to benefits necessary to their health and well-being to

which those beneficiaries are entitled.

21. The actions of Defendant described above threaten and continue to threaten the financial integrity of the Funds and impair their capacity to formulate funding standards, as well as cause the Funds to lose the monetary benefit of investment income that could be realized if the business entity's fringe benefit contributions based on accurate and complete payroll records were remitted in a timely fashion.

22. The actions of Defendant described above constitute actual threats of irreparable injury to the Funds and their participants and beneficiaries for that there is no adequate remedy at law, and public policy supports enjoining the business entity's activities.

23. The Funds have diligently requested the business entity to pay contributions in a timely manner and otherwise comply with its obligations so as not to impair the rights of the Funds and their participants and beneficiaries, but the business entity continues to violate its contractual and statutory obligations to the detriment of the Funds and their participants and beneficiaries.

24. In addition to the business entity's obligations under the agreements, it maintains obligations to the Funds under Section 502 of ERISA, 29 U. S. C. §1132(g)(2), which provides that when the trustees of multiemployer fringe benefit funds obtain a judgment in favor of the funds in litigation to collect unpaid

contributions, the Court shall award the unpaid contributions, interest on the unpaid contributions, the greater of interest on unpaid contributions or liquidated damages provided for by the funds in an amount up to twenty percent of the unpaid contributions, and reasonable attorney's fees and costs of the action, as well as all legal or equitable relief as the Court deems appropriate.

25. Defendant may have engaged in a pattern of fraud to avoid paying required fringe benefit contributions to the Funds and engaged in misconduct that includes converting money paid to the business entity for the purpose of paying fringe benefit contributions to the Funds or for the product of the labor of the Funds' participants, retaining money required to be held in trust for the benefit of the business entity's employees, withholding money from employee wages for transfer to the Funds but failing to do so, failing to submit monthly reports containing information about work performed by the business entity's employees and intentionally engaging in a scheme to deprive the Funds of money owing to them.

26. As owner, officer and the person who make decisions with respect to the business entity's compliance with its obligations to the Funds, special circumstances exist to dictate that the individual Defendant maintains responsibility for the business entity's compliance with its obligations to the Funds, on the basis that the individual Defendant with fraudulent intent improperly diverted money that

the business entity and any other entity composing Defendant were required to hold in trust for payment of fringe benefit contributions to the Funds under the Michigan Builders Trust Fund Act, M. C. L. A. §570.151-53, 29 C. F. R. §2510.3-102, ERISA and principles of equitable subrogation and constructive trusts, exclusive of other reasons that may independently dictate that the individual Defendant maintains responsibility for the business entity's compliance with its obligations to the Funds.

27. The individual Defendant is a fiduciary of the Funds as a result of his exercise of authority and control over unpaid fringe benefit contributions that constitute assets of the Funds. The individual Defendant breached his fiduciary duties to the Funds by electing to use money within his authority and control for purposes other than paying required fringe benefit contributions to the Funds.

28. Each Defendant and any successor in interest to, alter ego of or other entity affiliated with or operated by any Defendant, jointly and severally maintain obligations to:

a. Pay the Funds $19,347.39, consisting of $11,157.16 in fringe benefit contributions arising from work performed from October 2019 through June 2021, $232.90 in liquidated damages on untimely paid fringe benefit contributions, $7,616.58 in interest on the audit-disclosed contributions as of this date, and the $340.75 audit fee.

  b. Pay the Funds all other amounts determined to be owing as disclosed in an audit or other means, including for work performed from July 2021 onward.

  c. File timely and accurate contribution reports with the Funds, remit required fringe benefit contributions in a timely manner and otherwise ensure Defendant's compliance with its obligations to the Funds as set forth in any agreements of the business entity and any successor to the business entity requiring payment of contributions to the Funds during all periods through the present and all periods in the future in which any Defendant or a successor is obligated to do so.

  d. Pay the Funds all attorney's fees, audit fees and other costs incurred by the Funds in connection with pursuing Defendant's compliance with its obligations to the Funds in any manner, whether incurred before or after judgment, without separate application to the Court.

  e. Pay the Funds interest on fringe benefit contributions determined to be owing from the dates they became or become due, the greater of liquidated damages or interest on unpaid fringe benefit contributions, interest on liquidated damages on untimely-paid contributions determined to be owing from the dates they are assessed and interest on attorney's fees and costs from the dates they are incurred by the Funds, with liquidated damages accrued at the flat twenty percent rate used by the Funds and interest accrued at six percent above the rate set by the

Internal Revenue Service for underpayments of taxes.

WHEREFORE, Plaintiffs pray for this Honorable Court to issue a judgment containing the following provisions:

    A.    Commanding each Defendant and any successor in interest to or alter ego of each named Defendant to:

        1.  Pay the Funds $19,347.39, consisting of $11,157.16 in fringe benefit contributions for work performed from October 2019 through June 2021, $232.90 in liquidated damages on untimely paid fringe benefit contributions, $7,616.58 in interest on the audit-disclosed contributions as of this date, and the $340.75 audit fee.

        2.  Pay the Funds all other amounts determined to be owing as disclosed in an audit or other means, including for work performed from July 2021 onward.

        3.  File timely and accurate contribution reports with the Funds, remit required fringe benefit contributions in a timely manner and otherwise ensure Defendant's compliance with its obligations to the Funds as set forth in any agreements of the business entity and any successor to the business entity requiring payment of contributions during all periods through the present and all periods in the future in which any Defendant or a successor is obligated to do so.

        4.  Pay the Funds all attorney's fees, audit fees and other costs

incurred by the Funds in connection with pursuing Defendant's compliance with its obligations to the Funds in any manner, whether incurred before or after judgment, without separate application to the Court.

        5.   Pay the Funds interest on fringe benefit contributions determined to be owing from the dates they became or become due, the greater of liquidated damages or interest on unpaid fringe benefit contributions, interest on liquidated damages on untimely-paid contributions determined to be owing from the dates they are assessed and interest on attorney's fees and costs from the dates they are incurred by the Funds, with liquidated damages accrued at the flat twenty percent rate used by the Funds and interest accrued at six percent above the rate set by the Internal Revenue Service for underpayments of taxes.

        B.   Granting Plaintiffs in any supplementary proceeding to enforce a judgment in this action the opportunity to state a sum certain owing to include fringe benefit contributions, liquidated damages, interest, attorney's fees and other costs incurred up to the date of such supplementary proceeding, certified through signature of Plaintiffs' counsel without further application to the Court, subject to Defendant's right to request a hearing regarding any dispute.

        C.   Awarding Plaintiffs all other relief that the Court deems appropriate.

Respectfully submitted,

s/Jeffrey M. Lesser
Jeffrey M. Lesser (P33298)
Attorney for Plaintiffs
30300 Northwestern Highway, Suite 320
Farmington Hills, Michigan  48334
(248) 785-5225
lesser@jeffreymlesser.com

Dated:  November 8, 2023

C:\Users\Lesser\Desktop\clients\BondHard L.L.C.\Complaint.doc